UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASTON MARTIN LAGONDA OF NORTH AMERICA INC.<br><br>                                   Plaintiff,<br><br>                  v.<br><br>LOTUS MOTORSPORTS, INC. D/B/A ASTON MARTIN OF NEW ENGLAND<br><br>                                  Defendant. | **COMPLAINT** |

Plaintiff, Aston Martin Lagonda of North America, Inc. ("Aston Martin"), by its undersigned attorneys, for its complaint herein, alleges as follows:

**PARTIES**

1.  Aston Martin is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Irvine, California.

2.  Defendant, Lotus Motorsports, Inc. d/b/a Aston Martin of New England ("AMNE") is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business in Waltham, Massachusetts.

3.  Aston Martin and AMNE are parties to an Aston Martin Lagonda of North America, Inc. Dealer Agreement, fully executed as of April 30, 1996 (the "Dealer Agreement"), and renewed annually each year beginning in 1997.

**JURISDICTION AND VENUE**

4.  This Court has original jurisdiction of the subject matter of this action under 28 U.S.C. § 1331, in that this action arises under the laws of the United States.

5. This Court also has original jurisdiction of the subject matter of this action under 28 U.S.C. § 1332(a)(1), in that this is an action between citizens of different states, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. The Court has personal jurisdiction over AMNE. AMNE resides and is doing business within this judicial district.

7. Venue is proper in this district pursuant to (i) 9 U.S.C. § 4, in that this is an action to enjoin an arbitration proceeding that has been filed in this district, and (ii) 28 U.S.C. § 1391(a) and (c), in that at all times relevant to this action, AMNE was doing business in this district and a substantial part of the events giving rise to Aston Martin's claims occurred in this district.

## NATURE OF ACTION

8. This is an action: (a) to enjoin arbitration proceedings that are subject to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. but as to which, pursuant to 15 U.S.C. § 1226 ("Section 1226") , arbitration may be used to resolve the underlying controversies only if after such controversies arise all parties to the controversy consent in writing to use arbitration to settle such controversies, and Aston Martin has not given such consent and will not give such consent; (b) for a declaratory judgment pursuant to 28 U.S.C. § 2201 that (i) pursuant to Section 1226, Aston Martin has no obligation to arbitrate any controversies between itself and AMNE, (ii) AMNE has no right under the Dealer Agreement or Massachusetts law to protest, delay or interfere with Aston Martin's appointment of an additional authorized Aston Martin dealer in Wayland, Massachusetts, or elsewhere outside the statutorily-defined "relevant market area" provided for in Mass. Gen. Laws ch. 93B §§ 1 and 6, and (iii) additionally and/or alternatively, Aston Martin has not violated any rights of AMNE under any contract between it and Aston Martin and/or under Massachusetts law.

9. As shown below, there is an actual controversy between Aston Martin and AMNE with respect to the foregoing issues, making it appropriate for this Court to declare the legal rights of the parties.

## FACTS

### A. The Aston Martin Dealer Agreement

10. Aston Martin automobiles are manufactured in the United Kingdom by Aston Martin Lagonda Limited. Aston Martin is the exclusive authorized North American distributor of Aston Martin automobiles, which it sells to authorized dealerships across the United States for resale to retail consumers.

11. In or about April 1996, Aston Martin and AMNE executed the Dealer Agreement, pursuant to which AMNE was granted the right to purchase Aston Martin Products (as defined in the Dealer Agreement) from Aston Martin and to sell such Products to the consuming public from a location approved by Aston Martin. A copy of the Dealer Agreement is annexed hereto as Exhibit A.

12. Pursuant to Paragraph 5 of the Dealer Agreement, unless earlier terminated, the Dealer Agreement renews automatically for annual one-year terms on the anniversary date of the agreement. The Dealer Agreement was most recently renewed on or about April 30, 2013.

13. Nothing in the Dealer Agreement limits or otherwise restricts Aston Martin's right to appoint additional authorized Aston Martin dealers or confers upon AMNE any right to protest, prevent or delay the appointment of any such dealer.

14. Paragraph 7 of the Dealer Agreement provides that "any and all disputes arising out of or in connection with the Dealer Agreement" shall be resolved "by arbitration laws of the United States of America as codified in Title 9 of the United States Code, Paragraph 1-14."

### B. The Current, Actual Controversy Between Aston Martin and AMNE

#### (i) The Massachusetts Statute

15. Massachusetts has enacted a statute, codified at Chapter 93B of the Massachusetts General Laws, which comprehensively regulates business practices between motor vehicle manufacturers, distributors, and dealers.

16. Among other things, that statute establishes the circumstances under which an existing dealer may, and when it may not, challenge the appointment of a new dealer of that same line-make.

17. The statute gives an existing dealer the right to protest the grant of an additional franchise of the same line-make only when the new point is within the existing dealer's "relevant market area," as defined in Mass. Gen. Laws ch. 93B § 1 ("RMA"). When a new point is within an existing dealer's RMA, the dealer has the right to demand a hearing to determine whether the appointment is being made without good cause, in bad faith or in an arbitrary or unconscionable manner.

18. Under the statute, the proposed new Aston Martin dealership point in Wayland, Massachusetts lies outside AMNE's RMA, which is defined as the land mass encompassed in a circle with a radius of eight (8) miles from any boundary of AMNE's dealership site.

#### (ii) The Dispute Regarding Appointment of Additional Dealer

19. On April 5, 2013, Stephen N. Serio, dealer principal of AMNE, wrote to Aston Martin asking it to "confirm whether Aston Martin is planning on appointing another dealer in Massachusetts along with the proposed address/site of the new dealer."

20. On April 8, 2013, Aston Martin confirmed that it was interviewing candidates for such a second point, but that the site of the dealership would be outside of AMNE's 8-mile "protest" radius, as defined by Massachusetts law.

21. On April 27, 2013, counsel for AMNE wrote to Aston Martin, stating, *inter alia*, that (i) Aston Martin was "mistaken if [it] believe[s] that an 8 mile limit shields the egregious misconduct [it has] openly proposed;" (ii) the proposed appointment "is a thinly veiled attempt to destroy AMNE's business;" (iii) AMNE was prepared to "formally demand arbitration pursuant to Paragraph 7 of the [Dealer] Agreement" and (iv) AMNE demanded that Aston Martin "cease and desist from any further action with regard to appointing another dealer within New England." A copy of the April 27, 2013, letter from AMNE's counsel to Aston Marin is attached hereto as Exhibit B.

22. Aston Martin disputes AMNE's contentions and asserts that under the Dealer Agreement and Massachusetts law Aston Martin is entitled to appoint an additional authorized Aston Martin dealer outside of AMNE's RMA.

### (iii) The Demand for Arbitration

23. On or about May 6, 2013, Aston Martin received a Demand for Arbitration from AMNE, in which AMNE demands $3 million in damages and describes the nature of the parties' dispute (the "Dispute") as follows:

> Claimants Aston Martin of New England ("AMNE") and its principal, Stephen Serio allege that Respondent's [Aston Martin's] course of recent conduct amounts to an improper and illegal attempt to terminate the [Dealer] Agreement and, additionally, that the proposed placement of a new Aston Martin dealer near Claimant's dealership directly violates both the [Dealer] Agreement and the previous course of conduct, understanding, and agreement between the parties.

A copy of the Demand for Arbitration, together with exhibits, is attached hereto as Exhibit C.

Case 1:13-cv-11213-DJC   Document 1   Filed 05/17/13   Page 6 of 9


24. The Demand for Arbitration incorporates by reference another letter from AMNE's counsel, dated May 6, 2013, which sets forth additional claims by AMNE against Aston Martin, to wit: breach of contract, breach of fiduciary duty, unfair methods of competition and unfair or deceptive acts and practices, and misrepresentation.  The Demand for Arbitration provides few, if any, details of the facts allegedly supporting these additional causes of action.

25. AMNE has also taken the position that Aston Martin may not appoint any additional authorized Aston Martin dealer anywhere in New England.

26. Although Aston Martin desires to proceed immediately with its plans to establish an additional Aston Martin dealership in Massachusetts, it has stayed any such appointment pending resolution of the Dispute.

27. In the absence of the ability to add additional market representation, Aston Martin has suffered and will continue to suffer the loss of vehicle, parts and accessory sales and the profits it would derive therefrom.

28. By reason of the foregoing, there is an actual controversy between the parties, making declaratory relief appropriate under 28 U.S.C. § 2201.

## FIRST CLAIM FOR RELIEF

29. Aston Martin repeats and realleges each and every allegation in paragraphs 1 through 28 above as if fully set forth herein.

30. The Dealer Agreement is a "motor vehicle franchise contract" as that term is defined in Section 1226(a)(1)(B).

31. Section 1226 applies to all motor vehicle franchise contracts "entered into, amended, altered, modified, renewed, or extended after November 2, 2002."

32. The Dealer Agreement is a motor vehicle franchise contract that has been renewed since November 2, 2002.

33. The Dispute arises out of or relates to a motor vehicle franchise contract within the meaning of Section 1226(a)(2).

34. While the Dealer Agreements provides for the use of arbitration to resolve all controversies between the parties, under Section 1226(a)(2) arbitration may be used to settle any such controversy only if after such controversy arises all parties to the controversy consent in writing to use arbitration to settle such controversy.

35. Aston Martin did not consent in writing to use arbitration to settle the Dispute after the Dispute arose.

36. Accordingly, there exists no legally enforceable arbitration agreement between AMNE and Aston Martin with respect to the Dispute.

37. By reason of the foregoing, Aston Martin is entitled to an order enjoining the arbitration commenced by AMNE.

## SECOND CLAIM FOR RELIEF

38. Aston Martin repeats and realleges each and every allegation in paragraphs 1 through 37 above as if fully set forth herein.

39. There is an actual case or controversy between the parties as to whether Aston Martin has an obligation to arbitrate the Dispute.

40. By reason of the foregoing, Aston Martin is entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201, that it has no obligation to arbitrate the Dispute.

## THIRD CLAIM FOR RELIEF

41. Aston Martin repeats and realleges each and every allegation set forth in paragraphs 1 through 40 hereof as if fully set forth herein.

42. Nothing in the Dealer Agreement limits the geographical areas in which Aston Martin may appoint additional authorized Aston Martin dealerships.

43. Under Massachusetts statutory law, Aston Martin is entitled to add an authorized Aston Martin dealership anywhere outside of AMNE's RMA.

44. Aston Martin's addition of a dealership at a site outside of AMNE's RMA does not violate any contractual, statutory, or other right of AMNE.

45. By reason of the foregoing, Aston Martin should be granted a declaratory judgment that it has the right to add an additional authorized Aston Martin dealership (i) outside of AMNE's RMA and (ii) that any such action is not a violation of AMNE's contractual, statutory or other rights.

## PRAYER FOR RELIEF

WHEREFORE, Aston Martin prays for the following relief:

(i) On the First Claim, preliminary and permanent injunctive relief enjoining the arbitration commenced by AMNE;

(ii) on the Second Claim, a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Aston Martin has no obligation to arbitrate the Dispute;

(iii) on the Third Claim, a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Aston Martin has a right to appoint an additional authorized Aston Martin dealership (i) outside of AMNE's statutorily-defined RMA and (ii) in Wayland, Massachusetts, at a site outside of

AMNE's RMA, and (iii) that any such action is not a violation of AMNE's contractual, statutory or other rights;

    (iv) together with costs and such other and further relief as the Court deems just and proper.

    Respectfully submitted,

/s/ William H. Kettlewell
William H. Kettlewell (BBO #270320)
F. Thompson Reece (BBO #667857)
COLLORA LLP
100 High Street, 20th Floor
Boston, Massachusetts 02110
(617) 371-1000

OF COUNSEL:

Carl J. Chiappa
HOGAN LOVELLS US LLP
875 Third Avenue
New York, NY 10022
(212) 918-3000