UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ASTON MARTIN LAGONDA OF NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> LOTUS MOTORSPORTS, INC. D/B/A ASTON MARTIN OF NEW ENGLAND, <br><br> Defendant. | Civil Action No. 13-cv-11213 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                   March 18, 2014

### I.   Introduction

Plaintiff/Counter-Defendant Aston Martin Lagonda of North America, Inc. ("Aston Martin") has filed suit against Defendant/Counter-Plaintiff Lotus Motorsports, Inc. ("Lotus") seeking a declaratory judgment stating that Aston Martin is not obligated to arbitrate the instant dispute, a declaratory judgment that Aston Martin has to right to create an authorized dealership outside of Lotus's "relevant market area," as that term is defined under Massachusetts law, and to enjoin arbitration proceedings initiated by Lotus.  D. 1.  Lotus has brought counterclaims against Aston Martin alleging violations of the Automobile Dealers Day in Court Act, 15 U.S.C. §§ 1221–25 ("ADDCA"), and Mass. Gen. L. c. 93B, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, promissory estoppel and breach of contract.  D. 5. Aston Martin has moved to dismiss Lotus's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

1

D. 17. For the reasons discussed below, the motion to dismiss is ALLOWED IN PART and DENIED IN PART.

## II. Standard of Review

The Court will dismiss a claim that fails to provide sufficient facts to demonstrate "'more than a sheer possibility'" that the plaintiff is entitled to relief. García-Catalán v. United States, 734 F.3d 100, 102–03 (1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Taking the facts alleged in the complaint as true, the complaint must plead sufficient facts to state a claim "'plausible on its face.'" García-Catalán 734 F.3d at 102–03 (quoting Iqbal, 556 at 678). "[T]he complaint must contain more than a rote recital of the elements of a cause of action." García-Catalán, 734 F.3d at 103 (citation and quotations omitted). The Court also "must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citations and quotations omitted).

In deciding a motion to dismiss, the Court may consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." Nollet v. Justices of the Trial Court, 83 F. Supp. 2d 204, 208 (D. Mass. 2000).

## III. Procedural History

On May 17, 2013, Aston Martin filed its complaint. D. 1. On May 30, 2013, Lotus filed its counterclaims. D. 5. Aston Martin has since moved to dismiss the counterclaims. D. 17. After hearing the motion to dismiss, the Court took this matter under advisement. D. 43.

## IV. Factual Allegations

The facts recited are as alleged in Lotus's counterclaim, D. 5, unless otherwise noted. Aston Martin is a high-end luxury automobile brand. D. 5 ¶ 4. But for southern Connecticut,

2

Lotus has served as the sole Aston Martin dealership in New England since May 1996, at which time Lotus entered into a franchise contract ("the Dealer Agreement") with Aston Martin. Id. ¶ 10.

Lotus's principal, Stephen Serio ("Serio"), has developed expertise in repairing, restoring and servicing Aston Martin vehicles. Id. ¶ 9. Around 2003 or 2004, Aston Martin advised Serio that his showroom space was insufficient to service the increase in sales that Aston Martin anticipated as a result of the potential release of a "volume car." Id. ¶ 16. Aston Martin ensured Serio that he would sell 75 to 100 units per year based on the launch of this vehicle. Id. ¶ 17. Lotus alleges that based on Aston Martin's statements and upon Aston Martin's encouragement, Serio agreed to move his dealership to 85 Linden Street in Waltham, Massachusetts, investing more than $700,000 in the new facility and foregoing other business opportunities. Id. ¶¶ 12, 14, 19, 20, 24, 43, 51. Lotus alleges that Serio would not have spent such a sum on the new facility but for Aston Martin's assurances of increased sales and Aston Martin's needs. Id. ¶¶ 19, 21, 51. The new facility was intended to be the "Aston Martin of New England." Id. ¶¶ 19, 21.

Recently, Lotus customers informed Serio that they had heard rumors that Lotus would be going out of business. Id. ¶ 25. These customers told Serio that another automobile dealer, currently based in Wayland, Massachusetts, was telling his staff that his dealership was to become the new Aston Martin dealer in Massachusetts. Id. ¶¶ 25, 28.

In a letter dated April 5, 2013, Serio informed Aston Martin that he had heard rumors of the manufacturer's intent to open a competing dealership ("the Wayland dealership") 8.7 miles from Lotus's primary business location. Id. ¶¶ 33, 35. In an email dated April 8, 2013, Aston Martin responded:

> As requested and discussed I can confirm that we are in the process of interviewing candidates for a potential second location in the New England

3

> market place. It will be outside of the required 8 mile radius as Massachusetts
> law stipulates. Additionally we are still intent on delivering our Intensive Care
> Operations pilot program to you, this has been designed to assist underperforming
> stores improve overall operations and profitability. We will be reaching out soon
> to pick a new time that meets everyone's diary.

Id. ¶ 34. Lotus alleges that at some point in time, Aston Martin demanded that Lotus assent to the appointment of the Wayland dealership. Id. ¶ 40(C). Lotus alleges that any such assent would have destroyed its business operations and effectively terminated the franchise agreement. Id.

V. Discussion

   A. **The Court Dismisses Lotus's Statutory Counterclaims**

   *1. Count I – Lotus Has Failed To Plead an ADDCA Claim*

Aston Martin first argues that Lotus has failed to state a claim for violation of the ADDCA.

The ADDCA allows automobile dealers to sue automobile manufacturers who fail to "act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer . . . ." 15 U.S.C. § 1222 (2002). The First Circuit has interpreted the statute's "good faith" requirement "very narrowly," requiring "actual or threatened coercion or intimidation" to find a lack of good faith. George Lussier Enterprises, Inc. v. Subaru of New England, 393 F.3d 36, 43 (1st Cir. 2004) (quoting General GMC, Inc. v. Volvo White Truck Corp., 918 F.2d 306, 308 (1st Cir. 1990) (quotations and further citations omitted)). Moreover, a breach of contract alone does not suffice for an ADDCA claim. H.D. Corp. of Puerto Rico v. Ford Motor Co., 791 F.2d 987, 991 (1st Cir. 1986). "Malicious conduct or unfairness" will not suffice for such a claim either. Lussier, 393 F.3d at 43. Therefore, "to state a cause of action under the ADDCA, the aggrieved dealer must

produce evidence that the manufacturer or distributor (1) made a wrongful demand, coupled with (2) sanctions, or threat thereof." Id. (citing Wallace Motor Sales, Inc. v. Am. Motors Sales Corp., 780 F.2d 1049, 1056 (1st Cir. 1985)). A "wrongful demand" requires evidence of a penalty or sanction if a dealer does not comply. Lussier, 393 F.3d at 43; Wagner & Wagner Auto Sales, Inc. v. Land Rover N. Am., Inc., 539 F. Supp. 2d 461, 473 (D. Mass. 2008) (finding that manufacturer's allegedly unfair and inequitable demands were not wrongful). Imposing conditions is not akin to threatening penalties or coercion. Lussier, 393 F.3d at 43–44. Thus, manufacturers may place business conditions on their dealers, provided that the conditions do not violate the dealer's previously agreed-to contractual rights. Id. at 45.

The Court concludes that Lotus has not plausibly alleged that Aston Martin engaged in such conduct. While Lotus pleads in a conclusory fashion that Aston Martin wrongfully "demanded that [Lotus] assent to the appointment of the new dealership," D. 5 ¶ 40(C), Lotus has made no factual allegations supporting the conclusion that Aston Martin sanctioned, penalized or threatened to sanction Lotus for failing to comply with such assent.

Further, Lotus alleges that "[i]f [Lotus] fail[ed] to provide such assent [for Aston Martin to open a second dealership], its business operations will be destroyed, its franchise agreement will be terminated, and Aston will place a new dealership in Wayland, Massachusetts in direct contravention of previous agreements and conduct of the parties." Id. Lotus does not identify, however, any "previous agreement" it had whereby Aston Martin agreed not to open a second dealership in New England. The face of the Dealership Agreement does not prohibit Aston Martin from opening a second dealership; nor does it require Aston Martin to obtain Lotus's approval before opening a second dealership. See D. 1-1. Lotus describes only what it assumes are the probable economic consequences of its failure to comply with Aston Martin's demands,

5

which is insufficient for an ADDCA claim. See Lussier, 393 F.3d at 43 ("the mere fact that a dealer may have felt it had been coerced or intimidated is not sufficient"). While Lotus characterizes Aston Martin's intimation that it would open the Wayland dealership as "intimidat[ing] [Lotus] with threats of granting this third party a dealer location within close proximity to [Lotus's] present location," D. 5 ¶ 40(C), Lotus has not provided the necessary factual support for the conclusion that Aston Martin threatened to restrict any of Lotus's contractual rights if it failed to assent to the appointment of a new dealership.

The Court further concludes that Lotus has provide insufficient factual support for its contention that in pressuring Lotus to invest in a new dealership location, Aston Martin forced Lotus to act outside the scope of the parties' contract. See Fuller Ford, Inc. v. Ford Motor Co., No. 00-530-B, 2001 WL 920035 (D.N.H. Aug. 6, 2001) (dismissing ADDCA claim that suggested manufacturer "strongly encouraged or persuaded" dealer to purchase a new dealership site, as dealer did not allege that manufacturer threatened to penalize or sanction dealer if it failed to relocate).[1]

As such, the Court ALLOWS the motion to dismiss Lotus's ADDCA counterclaim.

2.  *Count V – Lotus Has Failed to State a Claim Under Mass. Gen. L. c. 93B*

Mass. Gen. L. c. 93B ("c. 93B") prohibits specific "[u]nfair methods of competition and unfair or deceptive acts or practices" in the automotive industry. Mass. Gen. L. c. 93B § 3. Aston Martin moves to dismiss Lotus's c. 93B claim under two theories: (1) Lotus's claim fails under Section 6 because the location of Aston Martin's proposed dealership falls outside of the

---

[1] The Court finds Lotus's reliance on Manhattan Motorcars, Inc. v. Automobile Lamborghini, 244 F.R.D. 204, 220 (S.D.N.Y. 2007) to be misplaced. That case involved a claim under the New York Franchised Motor Vehicle Dealer Act, which prohibits a manufacturer from imposing "unreasonable restrictions" on a dealer, but does not require coercion. Id. at 221; N.Y. Vehicle & Traffic Law § 466 (Consol.) (2012).

statutorily defined boundaries; and (2) the proposed dealership would not violate any other provision of c. 93B. D. 18 at 19.

Mass. Gen. Laws ch. 93B, § 4(a) provides that [i]t shall be a violation of . . . section 3 for any manufacturer . . . to engage in any action which is arbitrary, in bad faith, or unconscionable and which causes damage to the . . . dealer . . . ." Chapter 93B, § 6(a) provides that constitutes a violation of Section 3 for a manufacturer, "without good cause, in bad faith or in an arbitrary and capricious manner . . . to permit the relocation of an existing motor vehicle dealer representing the same line make as another existing motor vehicle dealer to a site any boundary of which is within the relevant market area of an existing motor vehicle dealer which is not relocating . . . ."

Chapter 93B defines "relevant market area" as:

> [T]he geographic area surrounding the boundary of a dealership, determined as follows: (1) If all boundaries of a dealership located in the counties of Bristol, Essex, Hampden, Middlesex, Norfolk, Plymouth or Suffolk are 8 or more miles from the border of the counties of Barnstable, Berkshire, Dukes, Franklin, Hampshire, Nantucket and Worcester, then the geographic area shall be the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the dealership.

Mass. Gen. L. 93B, § 1. Therefore, as a threshold matter, Lotus is only entitled to relief under c. 93B, § 6 if the competing dealership is within the relevant market area, statutorily defined as "the entire land mass encompassed in a circle with a radius of 8 miles from any boundary of the [existing] dealership." Mass. Gen. L. 93B, § 1. Here, Lotus does not allege that the Wayland dealership is to be located fewer than eight miles from Lotus. To the contrary, Lotus has stated that "[o]n information and belief the locus of the proposed competing Aston Martin dealership is 8.7 miles from [Lotus's] primary business location." D. 5 ¶ 35.

Further, Lotus is not entitled to relief under the other provisions of c. 93B. The Supreme Judicial Court has held that the predecessor to Section 6, which was revised to clarify the definition of "relevant market area," was the "sole provision available to dealers under c. 93B to

7

challenge the establishment of a proposed new dealership." Am. Honda Motor Co., Inc. v. Bernardi's, Inc., 432 Mass. 425, 434 (2000). While c. 93B § 4(a) bars manufacturers from engaging in behavior that is arbitrary, capricious or done in bad faith, the Bernardi court held that "to permit a dealer to challenge a proposed new dealership under this general provision would undermine and essentially nullify the [more specific provisions of the] statute . . . which are aimed at providing an expedient mechanism for manufacturers, distributors, and dealers to test, before capital is expended or damage done, the question whether a proposed new dealership unfairly poaches on an existing dealer's territory." Id. at 434–35 (citations and quotations omitted). Lotus may not, therefore, bring a claim under the other provisions of c. 93B to challenge the establishment of a competing dealership.

While the Court certainly understands Lotus's contention that c. 93B's eight-mile radius rule was "intended to protect mass market dealers," D. 31 at 6, the law currently does not provide for an exception for luxury car dealers. The Court must apply the law accordingly. Therefore, the motion to dismiss is ALLOWED as to the c. 93B counterclaim.

    **B.**    **The Court Dismisses Certain of Lotus's Common Law Claims**

        *1.*    *Preemption*

Aston Martin argues that Mass. Gen. L. c. 93B, § 15(e) confines Lotus's state law relief to the remedies provided by c. 93B. D. 41 at 6. Aston Martin does not cite, and the Court has not otherwise located, binding authority barring car dealers from bringing common law claims in addition to a c. 93B claim. While the Supreme Judicial Court has held that c. 93B provides the exclusive statutory remedy for violations of that chapter (as opposed to any remedies under c. 93A), see Reiter Oldsmobile, Inc. v. Gen. Motors Corp., 378 Mass. 707, 707 (1979), Massachusetts courts do not appear to have resolved whether a dealer is preempted from

bringing related common law claims in addition to c. 93B claims. To the contrary, cases in other courts applying Massachusetts law have involved plaintiffs pleading both c. 93B and common law claims. See, e.g., South Shore Imported Cars, Inc. v. Volkswagen of Am., Inc., No. 09-cv-11570-RGS, 2010 WL 1137558, at *1 (D. Mass. Mar. 22, 2010); Jaguar Cars v. Lee Imported Cars, Inc., No. 03-cv-12532-RGS, 2004 WL 1146105, at *1 (D. Mass. May 18, 2004).[2] As such, the Court will examine the merits of Lotus's common law claims.

### 2. Count II – Lotus Has Stated a Claim for Breach of Fiduciary Duty

Lotus must plead four elements for a breach of fiduciary duty claim: (1) Aston Martin owed a fiduciary duty to Lotus; (2) Aston Martin breached that duty; (3) Lotus incurred damages; and (4) the breach caused Lotus's damages. Pearson v. United States, 831 F. Supp. 2d 514, 519 (D. Mass. 2011) (citing Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153 (1999)). Aston Martin argues that Lotus has failed to plead the existence of a fiduciary relationship. D. 18 at 12–14.

To prove a fiduciary relationship, Lotus must show "at least that the relationship was one of trust and confidence; that [Lotus] relied upon the specialized knowledge or judgment of [Aston Martin]; and that [Aston Martin] was aware of the [Lotus's] reliance upon it." Davidson v. Gen. Motors Corp., 57 Mass. App. Ct. 637, 642 (2003). Typically, however, a franchisor-franchisee relationship does not create a fiduciary duty under Massachusetts law. KBQ, Inc. v. E.I. du Pont de Nemours & Co., 6 F. Supp. 2d 94, 100-01 (D. Mass. 1998) (citing Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co., 696 F. Supp. 57, 73–75 (D. Del. 1988),

---

[2] Supreme Judicial Court has recently considered a preemption issue regarding the Commonwealth's Wage and Hour Act, stating that express statutory language is required to preempt common law remedies. Lipsitt v. Plaud, 466 Mass. 240, 244–45 (2013). In regard to inferred preemption, the court further opined that the legislative intent for preemption "must be manifest," and that this inference may not be made lightly. Id. at 245 (quoting Comey v. Hill, 387 Mass. 11, 20 (1982)).

aff'd, 988 F.2d 386 (3d Cir. 1993)). The Court recognizes that a "disparity in bargaining power alone will not suffice to create a fiduciary obligation flowing to the party with superior bargaining strength. . . . the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one which is fiduciary in nature." Industrial General Corp. v. Sequoia Pacific Systems Corp., 44 F.3d 40, 44 (1st Cir. 1995) (citing Superior Glass Co. v. First Bristol County Nat'l Bank, 380 Mass. 829 (1980)). In accordance with Davidson, there are, however, certain circumstances in which Lotus could show that Aston Martin owed a fiduciary duty to Lotus: namely, if Lotus shows that it had a relationship of trust and confidence with Aston Martin; that it relied upon Aston Martin's specialized knowledge or judgment; and the company was aware of that reliance. Davidson, 57 Mass. App. Ct. at 642; Manhattan Motorcars, Inc., 244 F.R.D. at 220 ("contractual requirement that [the dealer] turn over proprietary information to [the manufacturer]" created the "exceptional circumstances" rising to a fiduciary duty).[3]

Accordingly, the Court cannot conclude that Lotus has failed to allege a plausible claim for relief as to this claim. Lotus has alleged that "Aston has developed and encouraged a fiduciary relationship with [Lotus] through its conduct," encourag[ing] and work[ing] with [Lotus] as a partner as [Lotus] made a $700,000 capital investment in its present location." D. 5 ¶ 12. Lotus has also alleged that it provided Aston Martin with "propriety customer information" and that it placed "tremendous trust" in Aston Martin. Id. ¶¶ 14, 45. The complaint states that the "course of conduct described . . . created more than a mere

---

[3] The Court recognizes that the test for breach of fiduciary duty differs under the test applied in Manhattan Motorcars, insofar as that test considers the vulnerability of the weaker party. Manhattan Motorcars, Inc., 244 F.R.D. at 214–15. Still, the Court finds Manhattan Motorcars instructive to some extent as to this claim, insofar as the court considered whether there was a "relation of confidence or trust sufficient to find the existence of a fiduciary relationship . . . ." Id. at 215.

franchisor/franchisee relationship" and that in return for Lotus's investment in the new Waltham location, Lotus "relied upon Aston as a fiduciary to recognize [Lotus's] economic dependency" on Aston Martin. Id. ¶ 43. Lotus has also pled that Aston Martin placed it in a "special group of 'Heritage Dealers'" and that Lotus held itself out as one such dealer. Id. ¶ 44. These facts are sufficient for stating a plausible claim under Count II and, therefore, the Court DENIES the motion to dismiss as to the breach of fiduciary duty counterclaim.

### 3. Count III – Lotus Has Pleaded a Claim for Promissory Estoppel

As an initial matter, promissory estoppel applies in the "absence of an express contract." Northrup v. Brigham, 63 Mass. App. Ct. 362, 369 (2005). Here, even as alleged by Lotus, there was an express contract between the parties, namely the Dealer Agreement. D. 5 ¶ 10. Moreover, the contract, which is incorporated by Lotus's reference to it in the counterclaim, included an integration clause. D. 5 ¶ 10; D. 1-1 at 14.

The promissory estoppel claim, however, is presumably pled in the alternative to the contract-based claims and Lotus has pled a plausible basis for relief as to this claim. See Meredith & Grew, Inc. v. Worcester Lincoln, LLC, 64 Mass. App. Ct. 142, 152 (2005) (vacating motion to dismiss quantum meruit claim where even if the contract between the parties is not void, "other fact issues may now arise that could affect a determination whether [the] agreement binds the defendants" and, in the absence of same, evidence may show that there was "an implied contract"). Although the Massachusetts courts have "not accepted the theory of promissory estoppel by name, its underlying principles have in effect been applied." Loranger Const. Corp. v. E. F. Hauserman Co., 6 Mass. App. Ct. 152, 155-56, aff'd, 376 Mass. 757 (1978). To plead a promissory estoppel claim under Massachusetts law, Lotus must allege that: (1) Aston Martin made an unambiguous promise which it should have reasonably expected to

"induce action or forbearance of a definite and substantial character" on the part of Lotus; (2) the promise induced action or forbearance; and (3) "injustice can be avoided only by enforcement of the promise." Neuhoff v. Marvin Lumber & Cedar Co., 370 F.3d 197, 203 (1st Cir. 2004) (applying Massachusetts law) (citation and quotations omitted); Rhode Island Hospital Trust National Bank v. Varadian, 419 Mass. 841, 848 (1995) ("an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all the necessary elements of a contract other than consideration").

Here, Lotus has pled a plausible basis for relief: that based upon its reliance on Aston Martin's implied and express promises, reasonably expected to induce Lotus's reliance and that reliance having been so induced, Lotus is entitled to enforcement of the promises. Specifically, Lotus alleges that Aston Martin promised its annual sales would increase, that such projection was based upon a region-wide demographic (including all of New England except Southern Connecticut) for the franchise and that as a result of these express and implied promises, Lotus expended $700,000 in a new facility to its detriment. D. 5 ¶¶ 17-19, 24, 50-52. Whether this claim will be borne out on an undisputed record at the summary judgment phase or a disputed record at trial remains to be seen, see D. 18 at 15 (Aston Martin arguing that Lotus will be unable to show that it made any unambiguous promises), but it at least provides a plausible basis for relief.

For these reasons, the Court DENIES the motion to dismiss as to the promissory estoppel counterclaim.

### 4. *Count IV – Lotus Has Pleaded a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing*

For a breach of the implied covenant of good faith and fair dealing claim, Lotus must plead that "there existed an enforceable contract between the two parties and that the defendant

12

did something that had 'the effect of destroying or injuring the right of [the plaintiff] to receive the fruits of the contract.'" Laser Labs, Inc. v. ETL Testing Laboratories, Inc., 29 F. Supp. 2d 21, 24 (D. Mass. 1998) (quoting Anthony's Pier Four v. HBC Assocs., 411 Mass. 451 (1991) (all other citations omitted)). The implied covenant's scope is "only as broad as the contract that governs the particular relationship." Chokel v. Genzyme Corp., 449 Mass. 272, 275–76 (2007) (citation and quotations omitted). The covenant does not create rights that were not provided for in the contract. Id. (citations omitted). Nor does it create contract terms that the parties were able to negotiate but chose not to. Id.

To the extent that Lotus argues that Aston Martin breached the parties' express contract (the Dealer Agreement), such argument fails.[4] No provision in the Dealer Agreement prohibits Aston Martin from placing another dealership in New England. See D. 1-1.

Lotus also argues that Aston Martin made an implied promise to maintain Lotus as the sole Aston Martin dealership in New England. D. 5 ¶ 51. As with the promissory estoppel claim, Lotus has pleaded a sufficient factual basis for this claim, at least, to survive the motion to dismiss. At this juncture, the Court cannot agree with Aston Martin "fails to tie Aston Martin's alleged bad faith to the performance of any specific obligations in the Dealer Agreement," D. 41 at 16, where Lotus alleges that Aston Martin's failure to make good on its implied and express promises as to the higher volume of projected sales for Lotus in the New England region (and Lotus's investment in the new facility as a result) coupled with its decision to grant another franchise to another dealer undermined the parties' franchisor-franchisee contractual relationship. D. 5 ¶ 30 (alleging that "[i]t is objectively clear to all parties that appointing a new luxury Aston Martin dealership so close to [Lotus] will effectively end [Lotus's] business

---

[4] Lotus's allegations in Count IV refer only to a breach of the implied covenant of good faith and fair dealing. D. 5 ¶¶ 54–55.

operation in Waltham"). The Court, accordingly, DENIES the motion to dismiss as to the breach of the implied covenant of good faith and fair dealing counterclaim.

        5.      *Count VI – Lotus Has Not Sufficiently Pleaded a Claim for Breach of Contract in Regard to the Arbitration Provision*

Although the parties included in the Dealer Agreement a provision requiring disputes to be arbitrated, D. 1-1, Aston Martin is correct that 15 U.S.C. § 1226(a)(2) requires that "whenever a motor vehicle franchise contract provides for the use of arbitration to resolve a controversy arising out of or relating to such contract, arbitration may be used to settle such controversy only if after such controversy arises all parties to such controversy consent in writing to use arbitration to settle such controversy." Although the parties originally entered into the agreement in 1996, D. 1-1 at 15, because the Aston Martin contract is "renewed from year to year on the anniversary date hereof," id. at 6, 15 U.S.C. § 1226 applies and supersedes the arbitration provision included in the Dealer Agreement. See Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc., 666 F.3d 932, 935 (5th Cir. 2012) (stating that Section 1226 is applicable to contracts "entered into, amended, altered, modified, renewed, or extended" after November 2, 2002); DaimlerChrysler Vans LLC v. Freightliner of New Hampshire, Inc., No. 03-304-B, 2004 WL 51314, at *2 (D.N.H. Jan. 8, 2004) (holding that parties were not bound by mandatory arbitration clause in their Dealer agreement because the contract was amended after November 2, 2002 and therefore subject to Section 1226).

Aston Martin has asserted in its complaint that it "did not consent in writing to use arbitration to settle the Dispute after the Dispute arose." D. 1 ¶ 36. Lotus, in answering the complaint, noted that no response to this allegation was required because it set forth a conclusion of law, but admitted that the "allegation set forth in paragraph 36 of the complaint is now the law

of the case." D. 5 ¶ 36. Therefore, the Court ALLOWS the dismissal of Lotus's claim for breach contract for failure to comply with the arbitration clause.

## VI. Conclusion

For these reasons, the Court ALLOWS Aston Martin's motion to dismiss Lotus's counterclaims IN PART, D. 17, but DENIES it as to the breach of fiduciary duty claim (Count II), promissory estoppel claim (Count III) and breach of implied covenant of good faith and fair dealing claim (Count IV).

**So Ordered.**

/s/ Denise J. Casper
United States District Judge